Daniel H. Bennett et al., Appellants, *v.* Frances S. Draper, Impleaded, etc., Respondent.

In the absence of language in a guaranty given to a firm, showing that the parties intended that it should survive changes in the partnership, the contract terminates with the existence of the firm to which it was given, and does not inure to the benefit of any firm or party succeeding to its business.

The complaint in an action against a surety upon a bond given to a firm to secure an indebtedness of the obligors and subsequent advances, set forth in substance that one of the members of the firm died after the execution of the bond, and was succeeded in the firm by another person. No indebtedness to the old firm was alleged, but it appeared that the advances sought to be recovered were made by the new firm. The bond was conditioned that the obligors would pay to the obligees, "their successors or assigns, all sums of money not exceeding $20,000, which shall be due or owing" from the obligors. *Held,* on demurrer to the complaint, that it could not be presumed or found from any reasonable construction of the language of the bond, that the parties contemplated a change in the firm to which it ran, or that advances would be made by any new firm ; that the defendant's contract did not cover the claim stated in the complaint, and so, that the demurrer was properly sustained.

(Argued June 28, 1893; decided October 3, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1891, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought upon a bond, of which the following is a copy:

"Know all men by these presents: That we John H. Draper and George T. Kellock composing the firm of John H. Draper & Company of the City of New York, as principals, and Frances S. Draper of the same place, widow as surety, are held and firmly bound unto H. C. Bennett & Company in the sum of forty thousand dollars lawful money of the United States of America to be paid to the said H. C. Bennett & Company their successors or assigns; for which payment well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seal and dated the 15th and 28th days of January, in the year one thousand eight hundred and eighty-one.

"Whereas, the said John H. Draper & Co. have borrowed and expect, from time to time, to borrow divers sums of money from the said H. C. Bennett & Co., and are desirous of giving to H. C. Bennett & Co., a continuing security for any money that the said firm of John H. Draper & Co. now owes or shall at any time owe said H. C. Bennett & Co., their successors and assigns, not exceeding the sum of twenty thousand dollars at any one time, and said H. C. Bennett & Co., having required said firm of John H. Draper & Co., to furnish such security —

"Now the condition of this obligation is such that if the above bounden obligors, their heirs, administrators or executors shall well and truly pay or cause to be paid to the above-named obligees, their successors or assigns all sums and every sum of money not however exceeding in the aggregate the sum of twenty thousand dollars, which shall at any time be due or owing from the said John H. Draper & Co., to the said obligees for or on account of any loans or advances made or any credit granted by the said obligees, their successors or assigns, to the said John H. Draper & Co., then the above obligation to be void, otherwise to remain in full force and virtue.

" It being expressly understood that this obligation is a continuing security for the sum of twenty thousand dollars, but that nothing herein contained shall be so construed as to require said obligees, their successors or assigns to allow the indebtedness of John H. Draper & Co. to reach said sum of twenty thousand dollars or to require said obligees, their successors or assigns to loan or advance to said firm any sum whatever or to grant them any credit or accommodation whatever.

" JOHN H. DRAPER, [L. S.]

" FRANCES S. DRAPER, [L. S.]

" GEORGE T. KELLOCK. [L. S.] "

The further material facts are stated in the opinion.

*J. Woolsey Shepard* for appellant. A reading of the bond clearly shows that it was the intention of the parties to make it a continuing security unto H. C. Bennett & Co., their successors and assigns, for any advances which they might make to said firm of John H. Draper & Co. (Addison on Cont. 655; *Strange* v. *Lee*, 3 East, 489; *Metcalf* v. *Brinn*, 12 id. 400; *Schmitz* v. *Langhall*, 88 N. Y. 503.) Instruments the nature of the one here in suit, should receive not only a liberal construction, but one favorable to the parties relying upon it, in their transactions with the principals. (*Gates* v. *McKee*, 13 N. Y. 232; *Mason* v. *Prichard*, 12 East, 227; *Drummond* v. *Preston*, 12 Wheat. 515; *Douglass* v. *Reynolds*, 7 Pet. 113; *White's Bank* v. *Myles*, 73 N. Y. 335; *Belloni* v. *Freeborn*, 63 id. 383; *Rindge* v. *Judson*, 24 id. 264.) The plaintiffs, upon a trial under the complaint, might have been allowed to show by parol proof that the bond was intended to cover any advances made by the successors of the firm of H. C. Bennett & Co., as well as the then existing firm. (*Beakes* v. *DaCunha*, 126 N. Y. 293.)

*George A. Strong* for respondent. The contract was not made with plaintiffs; plaintiffs' firm, indeed, was not then in existence. The contract was made with a firm which has

ceased to exist. To this plaintiffs say, that, on the dissolution of the old firm, the right to this instrument was assigned to them. No such thing is known to the law. (*Barlow* v. *Myers*, 64 N. Y. 45; *Watson* v. *McLaren*, 26 Wend. 430; *Smith* v. *Starr*, 4 Hun, 124; *Barnes* v. *Barrow*, 61 N. Y. 39; *Turk* v. *Ridge*, 41 id. 206.) Plaintiffs' entire case rests upon an erroneous interpretation of the phrase "successors and assigns," found in several places in the instrument in question. (*Lawrence* v. *Fox*, 20 N. Y. 288; *Vrooman* v. *Turner*, 69 id. 282; *Turk* v. *Ridge*, 41 id. 206; *Chamberlain* v. *Parker*, 45 id. 571; *Burr* v. *A. S., etc., Co.*, 81 id. 178; *N. M., etc., Assn.* v. *Conkling*, 90 id. 119; *People* v. *Pennock*, 60 id. 426; *Dance* v. *Girdler*, 4 B. & P. 34; *Ward* v. *Stahl*, 81 N. Y. 408.)

O'BRIEN, J. The question in this case arises upon a demurrer by the defendant, Mrs. Draper, to the plaintiffs' complaint in an action against her, as surety, upon a written guaranty, in the form of a bond with a penalty. The instrument was given by one mercantile firm to another to secure the payment of indebtedness and advances, the obligor firm being John H. Draper & Co., composed of the defendant Kellack, who has been sued as survivor, the other partner, John H. Draper, having died in July, 1890. The defendant who demurs was not, it seems, a member of the firm, but signed the obligation as surety. The obligee firm to which the guaranty ran was H. C. Bennett & Co., composed, at the time, of Hiram C. Bennett and Daniel. H. Bennett; but the plaintiffs in this action, though the firm name and the individual names of the members thereof are in all respects identical with the obligee firm and its members, are not the firm to which the guaranty was given. This arises from a somewhat singular circumstance, which tends to obscure and confuse the real question in the case. The instrument was executed January 28, 1881, and on November 30th, 1884, Hiram C. Bennett, one of the original obligees, died and was succeeded in the firm by another person of the same name, so that, although

the obligee firm was dissolved and terminated by the death of one of its members, there immediately came into existence a new firm, identical in name with the old one, and the names of the members in each case being also identical. The defendant's contract of suretyship ran to the old firm, and not in terms, at least, to the new, and the debt or advances of money, for which the defendant is sought to be charged, were made to the obligors by the new firm. These facts and the somewhat peculiar language of the instrument itself have given rise to the present controversy. In the absence of language in the guaranty showing that the parties intended that it should survive changes in the partnership, and inure to the benefit of the new firm, as well as the old, the defendants' contract terminated with the existence of the firm to which it was given. (Addison on Contracts, 655; Story on Partnership, §§ 244–251; *Strange* v. *Lee*, 3 East, 489; *Metcalf* v. *Bruin*, 12 id. 400; *Schmitz* v. *Langhaar*, 88 N. Y. 503.)

The instrument was not negotiable or assignable so as to secure new debts or advances made by the new firm, or parties other than the original obligees. (*Barlow* v. *Myers*, 64 N. Y. 45; *Watson* v. *McLean*, 26 Wend. 430; *Smith* v. *Starr*, 4 Hun, 24.)

Loans or advances made by the old firm on the faith of the guaranty could doubtless have been assigned to the new firm, and such assignment would carry with it a right of action on the guaranty. The complaint does not allege any debt from the obligees to the old firm, but, on the contrary, it appears distinctly that the advances made were by the plaintiffs, the new firm. A copy of the instrument is set forth in the complaint, and the only question that remains is whether from the averments of the pleading, or the language used by the parties in the contract, the plaintiffs have shown that the bond was to inure to their benefit. If that fact does not appear, or cannot be gathered from a fair construction of all the allegations of the complaint, it was, we think, fatally defective, and the demurrer was properly sustained below. After describing the existence and membership of the partnership firms

referred to in the bond as already stated, and the changes therein by death, the complaint proceeds to aver that in January, 1881, when the instrument was given, the obligor firm was then indebted to the obligee, being the old firm, for money loaned and advanced, and applied for further credit and advances, whereupon the guaranty was executed and delivered whereby the obligors bound themselves to pay to the obligees, "their successors or assigns all sums of money not exceeding $20,000 which shall at any time be due or owing from the said firm of John H. Draper & Co.," the obligors. This was more than three years before the firm to which the security was given, and had made the advances, was dissolved by the death of one of its members. It cannot be presumed or found from any reasonable construction of this language that the parties contemplated a change in the firm to which the instrument ran, or that advances would be made by any new firm of the same name. The state of things that now appears was not foreseen, and it would be straining language to hold that it was within the fair scope and purview of the guaranty to secure the payment of moneys, not advanced by the obligee, but by a new and different firm that succeeded it. The words "successors and assigns" of the obligee are given effect when we hold that the debt secured was capable of being assigned or transmitted, and could be collected by another firm upon which it devolved. The complaint then states that at different dates between the 2d day of April and the 18th day of June, 1887, more than six years after the instrument was given, the plaintiffs, a firm that did not exist until long after the security was given, made advances to the obligors amounting in the aggregate to $13,500, for which sum, with the interest thereon, the defendant is sought to be charged as surety. There would be but very slight ground for the plaintiffs' contention in this case except for the frequent and somewhat unnatural, if not inappropriate, use by the parties, in the writing itself, of the words "successors or assigns."

They are used in four places or paragraphs, one of which has been referred to. At the beginning and in the first sen-

tence, which contains the obligating clause, it is recited, after describing the parties, that the money is to be paid to the obligee named, " their successors or assigns." This language would be quite important if the action was one by the plaintiffs to collect advances or loans made by the old firm, on the faith of the guaranty, and which had been in some way transferred to them, but they furnish no ground for the claim that the guaranty was intended to cover advances or loans made long subsequently by the plaintiffs themselves. The broad claim of the plaintiffs is that by the use of these words in the instrument the defendant became bound to pay all loans or advances not exceeding the limit specified, made to the obligors, not only by the old firm, but also by the new firm, which was its successor. It must be admitted that there are some words in the instrument which, standing alone, would seem to give color to this contention. But upon a careful reading of the whole paper, which appears in the report of the decision below (*Bennettt* v. *Draper*, 62 Hun, 524), and, therefore, need not be quoted further here, and a fair consideration of all the circumstances, including the situation of the parties, the unforeseen changes that occurred subsequently, and the general purpose that they evidently had in view, we think that the defendant's contract does not cover the claim stated in the complaint. It is, no doubt, true that the same rules of construction applicable to contracts in general apply here (*Gates* v. *McKee*, 13 N. Y. 232), and that is the intention of the parties to be gathered from the language employed and, if need be, from the surrounding circumstances, must govern. (*Continental Ins. Co.* v. *The Ætna Ins. Co.*, 138 N. Y. 16.) The case must be disposed of in the same way and the same principles applied as if the old firm, to which the obligation in terms ran, had disappeared, in name as well as in fact, upon the dissolution produced by the death of Mr. Bennett. The plaintiffs' contention, if upheld, would hold the surety liable in such case for advances made at any time to the principal by any firm or party, providing it could be shown that they were the successors of the original obligee. It would be quite

unreasonable to hold in such cases that a surety intended to contract indefinitely with parties unknown to him at the time, and that his obligation passed unimpaired through all changes and mutations of the firm to which it was given, and that a remote successor of the original obligee, by virtue of a purchase of its assets or otherwise, can use it in the same way as if it was made directly to him and for his benefit. It cannot be supposed that such a result was within the contemplation of the parties. Nothing can be found in the record that would warrant the conclusion that the defendant contracted to be responsible to the plaintiffs for moneys advanced by them. Her obligation is limited to loans made by the firm, which it may be presumed she knew, and with which alone she had contractual relations.

The judgment appealed from is right and should be affirmed, with costs.

All concur, except ANDREWS, Ch. J., not voting.

Judgment affirmed.